**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOHN GUARENTE, | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | |
| v. | Civil Action |
| CHRISTOPHER MCMULLEN, | No. 22-4934 (KMW-AMD) |
| Defendant. | |
| | **OPINION** |

**Peter M. Kober, Esquire**
1864 Route 70 East
Cherry Hill, NJ 08003
*Counsel for Plaintiff John Guarente*

**Matthew P. Lyons, Esquire**
Gebhardt & Keifer, PC
1318 Route 31 North
Annandale, NJ 08801
*Counsel for Defendant Christopher McMullen*

**WILLIAMS, District Judge:**

## I.   INTRODUCTION

This matter arises out of an encounter Plaintiff John Guarente ("Plaintiff") had with Defendant Christopher McMullen ("Defendant McMullen") and other officers of the Salem City Police Department. On July 17, 2016, Defendant McMullen and Matthew Mease ("Mease") responded to a report that Plaintiff was lying unconscious on private property. When the officers arrived at the scene, they woke Plaintiff up and engaged in a conversation with Plaintiff, during which time Plaintiff admitted he had been "drinking all day." The officers informed Plaintiff he could not remain on the property, but Plaintiff refused to leave. A physical altercation ensued, resulting in Plaintiff's arrest.

Plaintiff brings this action against Defendant McMullen alleging claims of excessive force in his individual capacity under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act (the "Civil

Rights Act"), N.J.S.A. 10:6-2.[1] Presently before the Court is Defendant McMullen's Motion for Summary Judgment ("Motion") filed pursuant to Federal Rule of Civil Procedure 56, which Plaintiff has opposed. For the reasons that follow, Defendant McMullen's Motion is **GRANTED**.

## II.   FACTUAL BACKGROUND

Defendant McMullen submitted video footage of the officers' interaction with Plaintiff captured by Mease's bodycam (the "Bodycam"). Matthew Mease Certification ("Mease Cert.") ¶ 2 at Ex. A. The Court must rely on the Bodycam footage as the best evidence of what actually occurred on July 17, 2016, and, therefore, has drawn facts from that video where possible. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). However, where the facts are not clearly depicted in the Bodycam or the Bodycam does not show the events in question, the Court is required, on a summary judgment motion, to draw reasonable inferences in favor of Plaintiff. *See id.*; *Knight v. Walton*, 660 F. App'x 110, 112 (3d Cir. 2016).

In the early evening hours of July 17, 2016, Defendant McMullen and Mease received a call from dispatch that a male, later identified as Plaintiff, was lying unconscious on a rock near the Salem marina. Defendant McMullen's Statement of Material Facts ("Def.'s SMF") ¶ 3; Defendant McMullen's Brief ("Def.'s Br.") at 2. When the officers approached Plaintiff, they shook Plaintiff's arm to wake him up and were concerned as it appeared Plaintiff had been sleeping and could have been unconscious or hurt. Def.'s SMF ¶ 7; Def.'s Br. at 2.

Plaintiff was intoxicated during his interaction with the officers, having shared he had returned from a boat trip with his friends where he had been "drinking all day." Def.'s SMF ¶ 4. When the officers informed Plaintiff that he could not stay on the rock because he was on private

---

[1] The Amended Complaint alleges Defendant McMullen violated Plaintiff's rights under Article 1, Paragraph 7 of the New Jersey Constitution and the Civil Rights Act. Amended Compl. at 4. The Civil Rights Act is codified at N.J.S.A. 10:6-2.

property, Plaintiff "resented" the officers' request, stating he "didn't really know where to go" and refused to leave the area. *Id.* ¶¶ 18, 19, 20, 22. During the course of Plaintiff's interaction with the officers, Plaintiff suggested that the officers give him a ride home, accused one of the officers of acting "commando," and asked if the officers were there "to beat him up." Mease Cert. ¶ 2 at Ex. A at 0:43-1:07. When police asked Plaintiff if he wanted an ambulance, Plaintiff "misunderstood" and asked that police put him in handcuffs and take him away. Def.'s SMF ¶ 26.

The Bodycam shows Plaintiff stood up from the rock where he was sitting, stumbling on his left side, and then placed his left hand on the rock to prop himself up. Mease Cert. ¶ 2 at Ex. A at 2:21-2:24. Plaintiff fell backwards in the direction of Mease and Mease applied his hands on Plaintiff's back and upper arm, appearing to prop Plaintiff up. *Id.* at 2:24-2:27. At this point, the video is partially obstructed by the activity that ensues. However, what can clearly be seen is Plaintiff flailed his right elbow in Mease's direction and collided with the Bodycam.[2] *Id.* at 2:27-2:28. Defendant McMullen placed his right arm around Plaintiff's shoulder and neck area and turned Plaintiff toward the ground. *Id.* at 2:28-2:32. Plaintiff fell face first with Defendant McMullen's arm wrapped around him. *Id.*

A struggle then ensued between Plaintiff and Defendant McMullen as other officers attempted to handcuff Plaintiff. *Id.* at 2:30. An officer could be heard shouting "Give me your hands." *Id.* at 2:33-2:34. Mease began to place handcuffs on Plaintiff's hands with assistance from another officer. *Id.* at 2:36-2:42. Plaintiff could be heard saying "Alright stop choking me, I'm giving you my hands." *Id.* at 2:45-2:46. At the same time, the video clearly depicts Plaintiff

---

[2] During his February 17, 2023 deposition, Plaintiff did not recall swinging his elbow at Mease but admitted "[s]winging [his] elbow might have occurred as [he] was trying to get [his] balance from when [he] initially stood up. That could be misconstrued as swinging [his] elbow." Noel A. Lesica Certification ("Lesica Cert.") at Ex. A at 67:9-18.

resisting submitting his left hand. *Id.* An officer could be heard shouting again, "Give me your hand," and force was then used to handcuff Plaintiff's left hand. *Id.* at 2:46-2:50. Plaintiff could then be heard saying "I can't breathe. I can't fuckin breathe." *Id.* at 2:53-2:56. An unidentified officer said, "Well then stop resisting."[3] *Id.* at 2:56-2:57. After Plaintiff was handcuffed, Defendant McMullen released his hold of Plaintiff. *Id.* at 3:05-3:06. Thirty-nine seconds transpires between Plaintiff's contact with the Bodycam and Defendant McMullen releasing his hold of Plaintiff. *Id.* at 2:27-3:06.

Other than some scuffs and scrapes, Plaintiff did not require medical attention following the arrest. Def.'s SMF ¶ 40. On September 16, 2016, a grand jury indicted Plaintiff for aggravated assault on a law enforcement officer and resisting arrest. *Id.* ¶ 36. Following participation in a pre-trial intervention program and completion of community service, the charges against Plaintiff were dismissed. *Id.* ¶ 37.

On July 17, 2018, Plaintiff filed the instant action in New Jersey state court. *See* Notice of Removal at Ex. A. The state court dismissed the complaint for lack of prosecution but restored the case and granted Plaintiff leave to file an amended complaint. *Id.* at Exs. B, F. Plaintiff's Amended Complaint alleges excessive force claims against Defendant McMullen in his individual capacity pursuant to 42 U.S.C. § 1983 and the Civil Rights Act, N.J.S.A. 10:6-2. *Id.* at Ex. G. On August 5, 2022, Defendant McMullen removed the state action to this Court. *See generally* Notice of Removal.

---

[3] In his deposition, Plaintiff stated that during the arrest, "[his] hands wanted to come up to relieve the pressure around [his] neck so [he] could get air. So that was what they called resisting arrest." Lesica Cert. at Ex. A at 60:21-24. Plaintiff's attempt to proffer after-the-fact argument does not undercut record evidence that the officers asked Plaintiff for his hands several times and applied force to complete their arrest of Plaintiff.

On February 17, 2023, Plaintiff was deposed and testified that he did not belong on the property where police found him, that police told him he was there illegally, and that he directed "foul and threatening language" towards the officers. Def.'s SMF ¶¶ 21, 24. Plaintiff relies on the video to support his claims in this case, having testified that his "memory of the events is fuzzy," and that he reviewed the video "to understand . . . what happened." *Id.* ¶ 38.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if – taken as true – it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

In considering a summary judgment motion, the district court "may not make credibility determinations or engage in any weighing of the evidence." *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013) (quoting *Marino v. Indus. Crafting Co.*, 358 F.3d 241, 247 (3d Cir. 2004)). The moving party has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). While the nonmoving party is entitled to the benefit of all justifiable inferences from the evidence, it "may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings." *United*

*States v. Premises Known as 717 S. Woodward St., Allentown, Pa.*, 2 F.3d 529, 533 (3d Cir. 1993). The nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial'" by way of affidavits, depositions, answers to interrogatories, or admissions on file. *Celotex Corp.*, 477 U.S. at 324. Failure by the nonmoving party "to make a showing sufficient to establish the existence of an element essential to the party's case, and on which . . . [it has] the burden of proof at trial" entitles the moving party to judgment as a matter of law. *Id.* at 322-23.

## IV.    DISCUSSION

Section 1983 provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not on its face create substantive rights. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Rather, "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Id.* To establish a claim under Section 1983, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007) (alteration in original) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

The Civil Rights Act "is a state law corollary to 42 U.S.C. § 1983 – it creates a private right of action for the violation of civil rights secured under the New Jersey Constitution." *Roberson v.*

*Borough of Glassboro*, 570 F. Supp. 3d 221, 226 (D.N.J. 2021) (quoting *Armstrong v. Sherman*, No. 09-716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010)). This District "has repeatedly interpreted [the Civil Rights Act] analogously to § 1983." *Id.* (quoting *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011)). The Court will, therefore, analyze Plaintiff's Section 1983 and Civil Rights Act claims together, under Section 1983 precedent. *See Witt v. City of Vineland*, No. 20-14678, 2021 WL 3465597, at *3 (D.N.J. Aug. 6, 2021); *see also Roberson*, 570 F. Supp. 3d at 226.

There is no dispute that Defendant McMullen acted under color of state law when he put his arm around Plaintiff's neck and shoulder area and brought Plaintiff to the ground so officers could handcuff him. The issue before the Court is whether Defendant McMullen violated Plaintiff's constitutional rights in doing so. Plaintiff alleges that "[t]he use of excessive force against him by Defendant [McMullen] . . . violated" his rights under the Fourth Amendment and the Civil Rights Act. Amended Compl. at 4. Accordingly, the specific question before the Court is whether Defendant McMullen's use of force was excessive and, thus, violated Plaintiff's rights under the Fourth Amendment and the Civil Rights Act during the effectuation of Plaintiff's arrest.

It is beyond cavil that police officers are permitted to use a reasonable amount of force to effectuate an arrest. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) ("When a police officer uses force to effectuate an arrest that force must be reasonable."). However, the Fourth Amendment prohibits police officers from using excessive force to arrest a suspect. *See Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 182-83 (3d Cir. 2011)). "A 'seizure' triggering the Fourth

Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). Because it is undisputed that Plaintiff was arrested, the first element is satisfied. Thus, the only question remaining before the Court is the reasonableness of the seizure.

To determine the reasonableness of a seizure, the Court asks whether the officer's conduct was "objectively reasonable" in light of the totality of the circumstances, without regard to the underlying intent or motivation. *Graham*, 490 U.S. at 397; *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). The "objective reasonableness" inquiry requires an examination of the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Court may also consider "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997); *see also El*, 975 F.3d at 336. "[T]he central issue is the force the officers employed (and whether it was reasonable under the circumstances), not the injury they caused." *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011). In evaluating reasonableness, the Court must take into consideration that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (quoting *Graham*, 490 U.S. at 397). The Court should not apply "the 20/20 vision of hindsight," but should

8

instead consider the "perspective of a reasonable officer on the scene." *Id.*; *see also Kopec*, 361 F.3d at 777.

In evaluating the *Graham* and *Sharrar* factors against the record before this Court, the Bodycam footage of the interaction between Plaintiff and Defendant McMullen shows that Defendant McMullen's conduct was objectively reasonable in light of the totality of the circumstances. Here, although the suspected crime which prompted Defendant McMullen and the other officers to continue questioning Plaintiff was trespassing on private property – undoubtedly, not a severe crime – it is undisputed that Plaintiff was intoxicated, used foul and threatening language towards the officers, and refused to leave the area when the officers asked him to leave. These facts alone do not permit this Court to conclude that Plaintiff posed a serious threat to the officers. Notably, initially the officers were nonplussed by Plaintiff's responses to them. However, in viewing the Bodycam footage in the light most favorable to Plaintiff, it is clear that Plaintiff escalated the situation when he made physical contact with Mease's Bodycam. Plaintiff's initiation of physical contact with Mease's Bodycam, which followed his continued failure to obey the officers' requests that he leave the area, permitted the officers to "graduate their response" to Plaintiff's behavior. *See Bornstad v. Honey Brook Twp.*, 211 F. App'x 118, 125 (3d Cir. 2007) (finding plaintiff "initiated the physical encounter [with the officers] and prompted a continued physical response by the officers by failing to submit to their authority"); *see also United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985) ("Authorities must be allowed 'to graduate their response to the demands of any particular situation.'" (quoting *United States v. Place*, 462 U.S. 696, 709 n.10 (1983))). Even after Defendant McMullen put his arm around Plaintiff's neck and shoulder area, Plaintiff resisted as the officers were trying to handcuff him.

Moreover, Plaintiff does not provide any facts to demonstrate that Defendant McMullen placing his arm around Plaintiff's neck and shoulder area was indeed the controversial and often forbidden chokehold that may constitute an unreasonable use of force. Rather, Plaintiff's conclusory allegation that he was placed in an illegal chokehold is simply unsupported by the record. Indeed, Plaintiff does not identify the kind of chokehold Defendant McMullen placed him in or argue that Defendant McMullen's securing of Plaintiff meets the definition of a chokehold. Nor does Plaintiff provide Salem City's policy on police officers' use of chokeholds. Furthermore, Plaintiff fails to identify the portion of the Bodycam footage during which time the alleged chokehold took place. To this end, Plaintiff admitted his memory of events that occurred on July 17 was "fuzzy" and reviewed the Bodycam footage "to understand . . . what happened." Indeed, even after relying on his review of the Bodycam footage, Plaintiff does not specify times in the video when the use of the alleged chokehold occurred.

Finally, although the Third Circuit acknowledges "the right of an unarmed, uncooperative individual, who is not suspected of a serious crime, to be free from being dragged, slammed, or taken to the ground," *El*, 975 F.3d at 341, the undisputed facts here are quite different. Unlike in *El*, Plaintiff in the instant action was uncooperative and resisted the requests of the officers on multiple fronts. Plaintiff refused to leave the area after the officers requested that he do so, proceeded to initiate physical contact with the officers by way of colliding with Mease's Bodycam, and then resisted arrest as the officers were attempting to handcuff him. Consequently, this Court finds that Defendant McMullen's actions in a rapidly evolving situation – a situation involving Plaintiff's continued failure to obey the officers' requests and Defendant McMullen necessarily graduating his response to Plaintiff's physical behavior – were reasonable. Thus, the Court will not evaluate the circumstances "with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Accordingly, the Court finds that no reasonable factfinder could find that Plaintiff has established all of the requisite elements to sustain viable claims that his rights under the Fourth Amendment and the Civil Rights Act were violated. Simply stated, this case reflects officers using the requisite amount of force to effectuate an arrest of Plaintiff after he refused to leave the area despite their requests that he do so. Indeed, Plaintiff, in his inebriated state, escalated an otherwise minor trespassing situation by losing control of his own actions. Moreover, Plaintiff has not pointed the Court to any case law, Salem City policy, practice or procedure demonstrating that Defendant McMullen acted contrary to or engaged in an impermissible use of force. Consequently, the Court finds that Plaintiff has not met his burden of establishing that Defendant McMullen's actions were objectively unreasonable. Therefore, summary judgment is granted.

## V.     CONCLUSION

For all of the reasons set forth above, Defendant McMullen's Motion for Summary Judgment is **GRANTED**. An accompanying Order shall issue.

Dated: March 22, 2023

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE